IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 24, 2021

**BRETT A. PATTERSON v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Montgomery County**
**No. 031496   Jill Bartee Ayers, Judge**

_____

**No. M2020-00720-CCA-R3-ECN**
_____

The Petitioner, Brett A. Patterson, filed a petition for a writ of error coram nobis in the Montgomery County Circuit Court, contending that newly discovered evidence revealed that a vial of the victim's blood was broken during transportation to the crime laboratory with other items of evidence, and the blood spilled onto the other evidence. The Petitioner further contended a "tow-in receipt" for a vehicle the Petitioner had been driving revealed that the State had obtained certain items of evidence prior to the issuance of a search warrant. Additionally, the Petitioner contended that the statute of limitations for filing the error coram nobis petition should be tolled. After an evidentiary hearing, the coram nobis court denied the petition. On appeal, the Petitioner challenges the coram nobis court's ruling. Based upon our review of the record and the parties' briefs, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

S. Wayne Clemons, Jr., Clarksville, Tennessee, for the Appellant, Brett A. Patterson.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Arthur F. Bieber, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

On February 23, 1988, the Petitioner and his co-defendant, Ronnie Cauthern, were tried jointly and were convicted of the first degree murder of Captain Patrick Smith, the first degree murder of Captain Rosemary Smith, the first degree burglary of the victims' residence, and the aggravated rape of Rosemary Smith. See State v. Brett Patterson, No. 88-245-III, 1989 WL 147404, at *1 (Tenn. Crim. App. at Nashville, Dec. 8, 1989); Brett Allen Patterson v. State, No. 01C01-9805-CC-00221, 1999 WL 701455, at *1 (Tenn. Crim. App. at Nashville, Sept. 10, 1999). The Petitioner received a life sentence for each murder conviction, a ten-year sentence for the burglary conviction, and a forty-year sentence for the aggravated rape conviction. Brett Patterson, No. 88-245-III, 1989 WL 147404, at *1. The trial court ordered the Petitioner to serve the sentences for first degree murder and aggravated rape consecutively and ordered the ten-year sentence for burglary to be served concurrently with the first life sentence for first degree murder. Id.

On direct appeal, this court summarized the proof adduced at trial as follows:

> On the night of January 9, 1987, [the Petitioner] and Ronnie Cauthern drove to the home of Patrick and Rosemary Smith, who were both Captains in the United States Army assigned to Fort Campbell as nurses. [The Petitioner and Cauthern] wore masks and gloves, and each carried a loaded revolver. After severing the telephone line, [the Petitioner and Cauthern] broke a door pane, unlocked the door, and entered the Smiths' house. They were after a large sum of money thought to be kept in the bedroom.
>
> Once inside, [the Petitioner and Cauthern] discovered that the Smiths were at home asleep. They awakened them and pulled them out of bed. Patrick Smith tried to fight them off, while [the Petitioner] made repeated attempts to subdue him by applying a "sleeper," a wrestling hold designed to cause unconsciousness. Failing this, [the Petitioner] strangled Mr. Smith with a length of "880" military cord. Investigators later recovered similar cord from [the Petitioner's] residence when they searched it.
>
> Mrs. Smith was strangled with a silk scarf into which a narrow vase was inserted to form a tourniquet. The medical examiner found that the cartilage in her throat had been fractured, an injury which would have resulted only from application of great force. Mrs. Smith had also been raped.

When neither of the Smiths reported for duty on the following morning, two of their co-workers drove to their home to investigate. Finding the door glass broken, they called the police. Investigators arrived promptly and discovered Patrick Smith's body in the master bedroom, and Rosemary Smith's body in a guest bedroom.

The house had been ransacked and numerous items stolen, including articles of clothing, seventy dollars cash, personal checks, credit cards, a video cassette recorder, Mrs. Smith's engagement and wedding rings, her watch, and her purse. The keys to their two cars were also taken.

In the master bedroom, investigators found a piece of paper with Cauthern's name on it. Also written on it was the Smiths' phone number, address, and directions to their residence.

On the morning of January 12, 1987, an informant contacted the police and told them that [the Petitioner] and Cauthern, both of whom the informant knew well, had admitted taking the Smiths' property, sexually abusing Mrs. Smith, and killing them both.

The informant related to investigators how [the Petitioner] and Cauthern had broken into the house, described the method by which the Smiths had been strangled, and told of having seen several of the items stolen from their residence. The informant said that Cauthern was confident that he and [the Petitioner] would not be caught because they had worn masks and gloves.

Investigators then proceeded to the residence that [the Petitioner] shared with Cauthern and a third person—Eric Barbee. When they arrived, all three men were present and officers saw several of the stolen items in the trunk of Cauthern's car.

The residence was searched, and a large amount of incriminating evidence was seized.

> Both [the Petitioner and Cauthern] were arrested; both
> gave detailed and highly inculpatory confessions.

Id. at *1-2. This court upheld the Petitioner's convictions and sentences on direct appeal. Id.

On October 29, 1992, the Petitioner filed a petition for post-conviction relief and subsequently amended the petition several times. See Brett Allen Patterson, No. 01C01-9805-CC-00221, 1999 WL 701455, at *1. The post-conviction court denied the petition, and this court affirmed the denial on appeal. Id.

On March 27, 2001, the Petitioner filed a motion to reopen his post-conviction petition based upon newly discovered evidence. See Brett Allen Patterson v. State, No. M2004-01271-CCA-R3-PC, 2006 WL 3093216, at *2 (Tenn. Crim. App. at Nashville, Oct. 26, 2006). Thereafter, on September 9, 2003, "the petitioner filed a motion for the post-conviction court to accept an amended post-conviction petition instead of his motion to reopen his post-conviction petition." Id. Afterward, the Petitioner filed an "'Amended Motion for DNA Testing of Evidence and Petition for Post-Conviction Relief.'" Id. The post-conviction court denied the petitions and motions, and this court affirmed the post-conviction court's denials. Id. at *1.

Thereafter, on December 13, 2016, the Petitioner filed a petition for a writ of error coram nobis. See Brett A. Patterson v. State, No. M2017-00978-CCA-R3-ECN, 2018 WL 3302355, at *3 (Tenn. Crim. App. at Nashville, July 5, 2018) (designated "not for citation"). In the petition, he alleged that "the search of his home and [his] arrest were unlawful," maintaining that recently discovered unedited video recordings revealed that the video recordings used in the trial proceedings had been edited by the prosecution "'in order to hide the fact that the police officers had lied and planted evidence.'" Id. The Petitioner also requested a continuance in order to investigate an issue raised in his co-defendant's coram nobis petition. The Petitioner argued that the co-defendant's petition "referenced 'lab bench notes,' indicating that blood and DNA evidence were contaminated during transportation to the laboratory for analysis." Id.; see Ronald Cauthern v. State, No. W2015-01905-CCA-R3-ECN, 2017 WL 1103049, at *5, 10-11 (Tenn. Crim. App. at Jackson, Feb. 24, 2017). The coram nobis court denied relief.

On appeal, this court "conclude[d] that the record support[ed] the coram nobis court's determination that the petition was untimely because it was filed approximately twenty-seven years after the judgments became final." Brett A. Patterson, No. M2017-00978-CCA-R3-ECN, 2018 WL 3302355, at *4. This court further agreed that due process did not require tolling of the statute of limitations regarding the videotapes. Id. This court noted, however, that the coram nobis court had failed to address the Petitioner's request for a continuance based on the "lab bench notes." Id. at *5. Accordingly, this court remanded

"the case to the coram nobis court for consideration of the Petitioner's motion to continue for the purpose of providing the opportunity to investigate and to determine whether the laboratory bench notes constitute a cognizable claim for coram nobis relief." Id. at *6.

Upon remand, the Petitioner filed an amended petition in which he maintained that in this court's opinion regarding his original petition, this court had stated that his co-defendant's coram nobis petition had alleged "that the State had withheld exculpatory evidence, specifically, a handwritten TBI forensics report revealing that the blood from the victims and the [P]etitioner were stored together, and that at least one sample of the victim's blood broke during transport, and contaminated all other samples."[1] The Petitioner maintained that he was not aware of the laboratory bench notes until the opinion was filed. The Petitioner contended that the laboratory bench notes "show[ed] that the standard laboratory protocols were violated during transportation of samples to the laboratory, resulting in contamination of blood samples." The Petitioner contended that the laboratory bench notes also reflected that the glass slides of samples taken from the victim Rosemary Smith were "(blood covered)." The Petitioner contended that he first obtained the bench notes on September 25, 2019. The Petitioner alleged that evidence that the samples were contaminated would have been admissible at trial and "may have resulted in a different judgment."

At the hearing on the motion, defense counsel stated that this court had remanded the case for the coram nobis court to address the laboratory bench notes. Additionally, defense counsel contended that the Petitioner had obtained a "tow-in receipt" that was relevant to establish a timeline to show that the police searched a vehicle without a warrant and after obtaining the warrant, they got a video camera, "put all the stuff back," and "went in and pretended to search it again."

The State argued that the issue regarding the tow-in receipt had not been raised previously and was therefore barred by the statute of limitation. The State said that even if the issue were not time-barred, the tow-in receipt reflected that checks were found in the trunk of the car and that the checks belonged to someone other than the victims. The State contended, however, that the issue was not raised at trial or on direct appeal. The State noted that the issue could have been address in a post-conviction petition but was not raised. The State further alleged that, regardless, substantial evidence was adduced at trial to support the Petitioner's guilt.

---

[1] The Petitioner does not specify whether the vial of blood that "popped" was taken from Patrick Smith or Rosemary Smith. The laboratory bench notes reflect that Exhibit 2A, a blood sample taken from Patrick Smith, was "1/2 full top blown," suggesting that the "popped" sample was Patrick Smith's blood.

The coram nobis court noted that the Petitioner's case had been litigated numerous times and that the Petitioner had never mentioned the tow-in receipt previously. The court, therefore, found that any issues related to the tow-in receipt were "time-barred."[2]

The Petitioner testified that he had tried to obtain a copy of the laboratory bench notes since he read his co-defendant's appeal one or two months prior to filing his own petition for a writ of error coram nobis but that the district attorney only recently had provided the laboratory bench notes to his counsel. The Petitioner said that based on his reading of this court's opinion in his co-defendant's coram nobis appeal, he thought this court had "found that [a] sample of the victim's blood was being transported with blood samples from [the Petitioner] . . . [and that] the vial of the victim's blood had popped." The Petitioner said that if he had known the information concerning the potential contamination prior to his trial, he would have been able to show that the laboratory technician's testimony was "directly contradicted by these notes" and that the "testimony was perjured."

In its order denying the petition, the coram nobis court stated:

> The laboratory notes were admitted into evidence and consisted of seven (7) pages of handwritten notes. At the top of the first page, the notes list Victims: Rosemary Smith and Patrick Smith, and then Subjects: Brett A. Patterson and Ronnie M. Cauthern. The notes further show received 3 TCL kits from JAM (vault) on 1-15-87 and received 3 TCL kits to GB (vault) on 1-27-87. Regarding Exhibit 1 & 2, the handwritten notes do state, "Victims kit and suspects kit – everything blood covered – 1 tube popped! Vic #2 in Victim's kit: two liquid bloods – one top popped." The note then lists one glass slide; two saliva envelopes, 6 hair envelopes, one swab tube, one plastic vial. The remainder of the notes indicate that glass slides from victim Rosemary Smith are blood covered, along with Rosemary Smith['s] saliva sample, swabs and fingernail clippings. No other notes indicate that any other evidence was "blood covered." None of the notes indicate that the exhibits were unable to be processed. [The] Petitioner testified that if he had the laboratory notes at trial, they would have shown that the testimony of the TBI technician was perjured.

[2] The coram nobis court allowed the Petitioner to make a proffer regarding the tow-in receipt. The Petitioner proffered that the police had the credit cards and checks, took the items from the evidence room, put the items in the car, and videotaped themselves pretending to discover the items.

The coram nobis court noted that the Petitioner had filed his petition for a writ of error coram nobis well outside the statute of limitations and that the Petitioner had not demonstrated why he could not have discovered the laboratory notes in a more timely manner with the exercise of reasonable diligence. Moreover, the court found that the Petitioner had "provided no evidence at the error coram nobis hearing that if he had been aware of the laboratory bench notes at the time of his trial, and if they had been admitted at trial, that they may have led to a different outcome of the trial." The court explained that although the laboratory bench notes referenced a "vial 'popping'" and evidence being "blood covered," the "notes [did] not indicate any impact on the ability to test the evidence, or the outcome of the evidence tested, nor did the petitioner provide any proof of the same" nor did the Petitioner "provide any proof of a conspiracy or perjured testimony." Accordingly, the coram nobis court determined that the Petitioner had failed to prove he was entitled to tolling of the statute of limitations, and the court denied relief. On appeal, the Petitioner challenges this ruling.

## II. Analysis

The writ of error coram nobis is a post-conviction mechanism that has a long history in the common law and the State of Tennessee. See, e.g., State v. Vasques, 221 S.W.3d 514, 524-26 (Tenn. 2007). The writ "is an extraordinary procedural remedy . . . [that] fills only a slight gap into which few cases fall." State v. Mixon, 983 S.W.2d 661, 672 (Tenn. 1999). Generally, a decision whether to grant a writ of error coram nobis rests within the sound discretion of the trial court. See State v. Hart, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995).

Our supreme court has outlined the procedure that a court considering a petition for a writ of error coram nobis is to follow:

> [T]he trial judge must first consider the newly discovered evidence and be "reasonably well satisfied" with its veracity. If the defendant is "without fault" in the sense that the exercise of reasonable diligence would not have led to a timely discovery of the new information, the trial judge must then consider both the evidence at trial and that offered at the coram nobis proceeding in order to determine whether the new evidence may have led to a different result.

Vasques, 221 S.W.3d at 527; see Tenn. Code Ann. § 40-25-105. In determining whether the new information may have led to a different result, the question before the court is "'whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceeding might have been different.'" Vasques, 221 S.W.3d at 527

(quoting State v. Roberto Vasques, No. M2004-00166-CCA-R3-CD, 2005 WL 2477530, at *13 (Tenn. Crim. App. at Nashville, Oct. 7, 2005)).

Regarding the timeliness of the petition, a writ of error coram nobis must be filed within one year after the judgment becomes final in the trial court. Tenn. Code Ann. § 27-7-103. "The statute of limitations is computed from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed, post-trial motion." State v. Harris, 301 S.W.3d 141, 145 (Tenn. 2010).

As noted in this court's opinion remanding the error coram nobis petition, "[t]he parties do not dispute that the coram nobis petition was filed long after the statute of limitations expired, and we conclude that the record supports the coram nobis court's determination that the petition was untimely because it was filed approximately twenty-seven years after the judgments became final." Brett A. Patterson, No. M2017-00978-CCA-R3-ECN, 2018 WL 3302355, at *4. Therefore, the issues raised in the original petition and the amended petition were clearly untimely.

The one-year statute of limitations may be tolled on due process grounds if a petition seeks relief based upon newly discovered evidence of actual innocence. Wilson v. State, 367 S.W.3d 229, 234 (Tenn. 2012). Our supreme court has stated that "[i]n determining whether tolling of the statute is proper, the court is required to balance the petitioner's interest in having a hearing with the interest of the State in preventing a claim that is stale and groundless." Id. In general, "'before a state may terminate a claim for failure to comply with . . . statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner.'" Id. (quoting Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992)). Our supreme court has described the three steps of the "Burford rule" as follows:

> "(1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are 'later-arising,' determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim."

Id. (quoting Sands v. State, 903 S.W.2d 297, 301 (Tenn. 1995)). "Whether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness." Harris, 301 S.W.3d at 145.

As we have noted, this court remanded the Petitioner's case to the coram nobis court "for consideration of the Petitioner's motion to continue relative to the laboratory bench notes." Brett A. Patterson, No. M2017-00978-CCA-R3-ECN, 2018 WL 3302355, at *6. While the case was pending after the remand, the Petitioner filed an amended petition, raising an issue concerning a tow-in receipt. The coram nobis court found that any issues related to the tow-in receipt were waived as untimely. The Petitioner did not make any arguments in the coram nobis court or on appeal regarding why he could not have discovered the notes earlier nor has he provided any proof to justify tolling. As the State notes, the Petitioner's co-defendant discovered the laboratory bench notes and the tow-in receipt in 2014, two years before the Petitioner filed his original petition for a writ of error coram nobis, indicating that the Petitioner could have found the notes much earlier than he did. See Ronald Cauthern, No. W2015-01905-CCA-R3-ECN, 2017 WL 1103049, at *11. Therefore, we conclude the coram nobis court did not abuse its discretion in declining to toll the statute of limitation.

Nevertheless, the coram nobis court addressed the merits of the issue. Initially, we note that in this court's prior opinion remanding the case, this court stated, "Absent a showing that counsel or the Petitioner learned of the existence of the laboratory bench notes before 2017, the laboratory bench notes may constitute later arising evidence involving a violation of Brady . . . ." Brett A. Patterson, No. M2017-00978-CCA-R3-ECN, 2018 WL 3302355, at *6. On remand, the coram nobis court observed that in Nunley v. State, 552 S.W.3d 800, 812 (Tenn. 2018), which was issued after this court remanded the Petitioner's case, our supreme court held that "an error coram nobis proceeding is not the appropriate procedural vehicle for obtaining relief on the ground that the defendant suffered a constitutional due process violation under Brady. . . .[3] The appropriate procedural mechanism to seek relief for a Brady violation is a post-conviction proceeding." The coram nobis court said that, regardless, it would address whether the Petitioner was entitled to coram nobis relief based upon the laboratory bench notes.

In his appellate brief, the Petitioner specifically acknowledged that a writ of error coram nobis petition was not the appropriate avenue for pursuing relief from a Brady violation and therefore Nunley would have resulted in the dismissal of his error coram nobis petition. However, the Petitioner maintained that "this petition is not alleging Brady violations, although such issues may have arisen in previous proceedings. Rather, [the Petitioner] presents his petition on the grounds that he discovered evidence unable to be previously presented despite the due diligence of [the Petitioner] and his counsel." We

---

[3] In Brady v. Maryland, 373 U.S. 83, 87 (1963), the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

agree that the Petitioner's claims did not implicate <u>Brady</u> and that <u>Nunley</u> is inapposite to the instant case.

Further, the coram nobis court found that the laboratory bench notes reflected that a vial of "the victim's" blood had "popped" and spilled onto other evidence. Neither the notes, nor any other evidence presented by the Petitioner, indicate how the laboratory's ability to test the evidence was impacted by the spillage. Moreover, the Petitioner did not adduce any proof regarding what the testing revealed. Further, the notes reflected that the blood had spilled onto evidentiary items, including saliva samples and fingernail clippings taken from the victim Rosemary Smith. In other words, "the victim's" blood had not contaminated any items belonging to the Petitioner nor had any of the Petitioner's blood spilled on other items of evidence. Based on the foregoing, the coram nobis court determined that the Petitioner had failed to show any evidence that the information in the laboratory bench notes might have changed the outcome of the trial. We agree.

Moreover, we note that the evidence against the Petitioner and his co-defendant at trial was overwhelming. Notably, in the master bedroom of the victims' home, the police discovered a piece of paper on which the co-defendant's name, the victims' phone number, the victims' address, and directions to their address were written. <u>Brett Patterson</u>, No. 88-245-III, 1989 WL 147404, at *2. Additionally, the police were contacted by an informant who knew the Petitioner and his co-defendant well. <u>Id.</u> The informant told the police that the Petitioner and the co-defendant had admitted taking the victims' property, sexually abusing Rosemary Smith, and killing the victims. <u>Id.</u> The informant also gave the police relevant details about how the Petitioner and the co-defendant committed the crimes. <u>Id.</u> At a residence the Petitioner and the co-defendant shared with another person, the police found a large amount of incriminating evidence and several items stolen from the victims were found in the trunk of the co-defendant's car. <u>Id.</u> Additionally, both the Petitioner and his co-defendant "gave detailed and highly inculpatory confessions." <u>Id.</u> We conclude that the coram nobis court did not err by denying the petition.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the coram nobis court.

_____
NORMA MCGEE OGLE, JUDGE